Our first case for argument today is 19-2368, Promptu Systems v. Comcast. Mr. Schachter, please proceed. Good morning, and may it please the Court. The main issue in this case is whether the Board dared in construing the term network path to include communications to devices outside of a network. Promptu respectfully submits that it did. Here, the parties agree that a network path in part means a physical route through which data is transmitted from a source to a destination, and the only dispute on appeal is whether that route must comprise nodes, each capable of sending and receiving information with other nodes. Your position depends on your view that there have to be two such bidirectional nodes. That each node in the network would seem to imply that there are multiple user sites, or, sorry, excuse me, that there are multiple nodes in the network, otherwise there would be nothing to send information to and from. Is that Your Honor's question? I don't think it is. I'm imagining a hub and spokes or something where just a simple model, a single node only receives from end point A but sends out to end points B and C. A single node, two things it sends out to and only sends out to, doesn't receive anything back from them. One, it only receives from. No, Your Honor, that is not what we're advocating. No, no, no. If I thought that that was a network path, then I didn't have to think anything further than you lose on this point about your claim construction and whatever affects that. I don't think so, Your Honor, because I think what we're talking about here is whether a node must be able to send and receive information to other nodes. The other nodes don't need to be the same. Maybe we're just going around in circles. I take it your position is that a network path has to have at least two of those. Two of those what? Bidirectional nodes. Can I call it a bidirectional node and will we understand each other? I think it sends and receives. Sure. I think figure two actually maybe resolves this dispute, Your Honor. Figure two of the patent shows multiple nodes and what they call a loop. There are nodes 120, 124, and 126. They all do that. That's not the question. It's not a question of whether a particular embodiment shown in a particular figure has more than one. The question is whether you're arguing for a claim construction that requires there to be more than one of those bidirectional nodes. I think you are, right? We are arguing that a network node or a node in a network has to be able to send and receive information to another node in the network. No, that's not what you're arguing. The claim term is first network path, and your construction requires, as I understand it, that there be network nodes, plural, that are capable of sending and receiving information to and from the network. Your proposed construction requires at least two nodes that are capable of both sending and receiving. To something else in the network. To something else in the network. They don't have to be the same node. Of course they don't have to be the same node. That's why I said there are two nodes. Right, but what I'm saying is that the sending and receiving doesn't have to be to the same node. It doesn't have to send information to the same node from which it received information. Does that clear up the dispute? Okay, well, my problem is on column 28 of the patent at line 36, you explained that, and I think this kind of goes to your point, in this example, by the way, it's communication between the node and the head end. And I think that's what you're getting at. It doesn't have to be node to node. It could be node and central processing station, or node and head end unit, or something like that, right? Those are all nodes. Oh, the central processing station is also considered a node. Yes. Okay, well, all right. Well, then, in any event, it says here, the coupling between node 126 and the head end may also support bidirectional communication. So why would the use of the word may there not suggest that it also may not support bidirectional? Because that's describing the coupling, not the node. We don't disagree that couplings may be unidirectional, but the question is whether the node has to be able to bidirectionally communicate. Again, figure two, I think, in this loop structure, resolves this issue and explains what we mean by this. So, for example, in figure two, which is also describing the node, for example, in column two that we cite to, it describes a node as having a receiving side for receiving information. Are you talking about the figure two prior art? Yes. Yes. And, again, that's partially because the notion of what a network is is so foundational to this patent, in the 326 patent, that we are describing a cable television network here. Everyone understands that. And so figure two, for example, is showing... That's not what you claim. Well, I don't think there's really been any dispute, Your Honor, that the networks involved here are cable television and video delivery networks. That comes directly, for example, out of Red Brief, page 38, where they say that the specification is clear that the networks involved are cable television and video delivery networks. To be honest, I don't care what they say in the Red Brief, nor do I care what you say in the Blue Brief. I care what the claims say, and the claims don't say that. Well, the claims say network, and so claim terms have to be construed in light of the specification, obviously. And so the specification here is not claiming any ad hoc network willy-nilly. It's claiming a very specific type of network. The specification, including the claims, and the claims don't apply to a cable network. At least not claim one, for example. They apply to a cable television and or video delivery network. Where does it say that in claim one? Well, that's the type of network that's being described. Again, that's in the title of the patent. That's in the abstract. You would now like me to read the title of the patent in the claim one? No, I'm not asking. Normally, people want me to read stuff from the specification or the written description portion of the specification of the claims. It happens all the time. Well, again, Your Honor, I think we don't need to go any further than to look at some of the statements that were made during the IPR proceeding that explain what this means. So, again, in the district court and in the IPR, appendix 10667, Comcast said that it's clear on its face that network path consists of a series of nodes within a network. Then in the IPR, their expert agreed that a network comprises nodes or is a series of nodes, and then he was asked what a node is, and he explained that a node is an entity that receives information from the network and can put information on the network. That's that type of bidirectional communication that we're talking about. That's exactly consistent with column two, which says that a node has a receiving side for receiving information and a side for distributing information to other nodes in the network. We're not asking to read in a limitation from the title, but we think that it is important to understand what is actually being claimed here and what the purpose of the patent is, which is cable television. This is not, again, a remote sensing network. It's a cable television network and for video delivery as well. Yes, but there are networks, and even in the cable television capacity aren't there, that television networks that have a central processing hub that sends out information to individual users, but it doesn't necessarily, does it necessarily always, does every individual user communicate back with the network? Well, certainly, again, to be a network implies this bidirectional communication, and that comes directly, otherwise you don't have a network. That is what their experts said in the IPR. Here's the problem. You say network implies bidirectional communication, but you also have at column, I don't know what column it is, column 26, you say the invention, which you're saying is a network, supports unidirectional communication via coupling. Now you're going to tell me again, oh, well, that's the coupling, but I'm sorry, the coupling is part of the network. The network is not these two disjunctive machines without any means of actually communicating. The network itself involves the machines and the method of their communication. The coupling 1002 is the coupling between the remote device and the set-top box, if I remember correctly, that's what 1002 is. So all of this is saying is that you can have a bidirectional or unidirectional remote. We don't disagree with that. You can have many different types of remotes. The question is whether a unidirectional remote is on the network. And here, again, this never says that coupling 1002 is on the network. The word network I don't see appear in that paragraph. So that doesn't say that that coupling is in the network. There's nothing in there. A similar type of argument, I think, was made both by Comcast and the district court, in column 10, where they talk about a unidirectional remote control. But the word network never appears in that paragraph. Nor does node appear in that paragraph. It's simply describing an irrelevant embodiment where you have a remote control that can be either unidirectional or bidirectional. But as we argued in our briefs, the specification never describes any remote control, unidirectional or not, as being in the network. And that's the problem with the board's construction. Again, the board's construction, and as Comcast argues it, is the reason why the remote has to be in a network path is because the claims say transmitting information from a source or from a first wireless device, which is the remote in this case, to a speech recognition engine via a first network path. And according to them, that specifies that if you have any communication from one device to another, that defines a network path. The problem with that argument is that that renders the first network path term in the claims irrelevant. You wouldn't need to claim a first network path if every time you communicated information from a device to another, you had a network path. The network path would become meaningless in that context. The second problem with that argument is it overlooks the intervening preposition via. As we explained in the gray brief, the claims don't recite, just again, sending information from a device to another on a path that says via a first or second network path. And the word via there refutes the suggestion that the remote has to be part of this first network path, because as we argued, via indicates that the network path is an intermediate course or an intermediate band along a broader journey. And so it is not the case that the television or the remote control has to qualify as the endpoint or the starting point of the network path. The network path is something different. It's something that's on the cable television network. What was your evidence that you said that you presented that suggested that the plain and ordinary meaning of network paths required nodes capable of bidirectional communication? So column two, Your Honor, for one, where it says that a node has a receiving side for receiving information and a means for distributing information to other nodes. Where in column two? Column two, beginning at roughly line 55. It says that at the receiving side of the node, the optical signal can get converted into information, and then this signal in turn is amplified and distributed via another coaxial cable to appropriate subscribers. It's describing a node that's receiving and sending information. That's an embodiment that was never refuted or described in the red brief. All that the red brief says is, well, that's describing the prior art. But that's our point. That idea of what a cable television network is or what a node is is so foundational to the patent that everyone understood what that meant. We were not trying to say that a simple IR blaster remote exists on a cable television network. No one would understand a remote control to have that feature. And so that's one piece of evidence. The other piece of evidence, for example, is in column 10, where it says that ceptop boxes have a unique address in the network. The specification network. Again, can you please give me a line? Beginning at roughly line 38, it says that the ceptop box, the user site also, has a distinct address in the network delivering video content and or cable television. There's the cable television and the video content again. There's no dispute, again, really, that these networks are for cable television delivery and video content. And items in the network have a distinct address. That's how you route information to them. In this case, beginning at roughly column 11, spanning onto, I think, column 12, line 4, it describes how the speech recognition engine uses this address information from the ceptop box to facilitate faster speech recognition processing. Okay, just out of curiosity, you're adamant that all of these claims are limited to a cable network or video content distribution network? Is that right? I think that they are limited to cable television and video content delivery. What about the claim incorporates that limitation? Because when I read claim 1, I thought, gosh, that reads on Siri. Siri's not a video delivery network or a cable television network, but it is a speech recognition system that then delivers content to me based on when I talk to it. The purpose of this invention is delivering cable content and video delivery. No, you can't just say what the purpose of the invention is. The invention is defined by the scope of the claims that you love. Yes, read in light of the specification. But what about this claim? If you want me to import a limitation into this claim that limits it to cable delivery, where would I import said limitation? Or what lexicography exists that says the present invention is limited to cable television networks or something like that? I don't think this is a matter of lexicography, Your Honor. It's just understanding the claim terms in light of the specification. And the purpose of this invention is delivering video content that, for example, a user has spoken into his or her remote and asked for certain cable television services and receives that either via video or cable. It's not about something else. What am I missing? Do you have Claim 1 in front of you? Yes, I have Claim 1 in front of me. Am I missing something? Because Claim 1 does not even require video content being delivered.  What am I missing? It's via the word network. It's what type of network. You think that the plain definition of network that I have to give it requires that Claim 1 is not only limited to cable, but it's also limited to the transmission of video content even though it only uses the word information and never uses the word video? I mean, you recognize, right? Audio and video are wildly, dramatically different, correct? Yes, audio and video are different. And you're telling me this claim reads out and would not cover audio transmission in response to speech recognition? I would say that there's no embodiment, for example, described that I understand in the specification that describes delivering solely audio content. So the claims have to be understood in light of the specification. And you think that claims are limited to the embodiments in the specification? No, but there would have to be a reason for, I think, extending it beyond to something that doesn't appear to be contemplated. And again, there's no evidence in the case that any artisan would... Wouldn't a skilled artisan know if you can send video, you could also send audio? I mean, heck, that seems quite vague. And there's nothing in the record, I think, to suggest that. I don't think that their expert ever said that this would envision audio transmissions, for example. No, but you're the one telling me to construe this claim in a very narrow fashion that I find no terms in the claim itself to support. And I don't see anything that amounts to lexicography that would simply narrow these claims. And that's my concern. Again, Your Honor, I think it's just as simple as, in the context of the patent, the context makes plain what a note is. It's clear what a network is that's being contemplated by the claims. And it would be improper to broaden this out to embodiments that are not disclosed in the patent, especially when there hasn't been any evidence in the case that says that they would cover such a network. I just want to be clear that you just said on the record it would be improper to broaden this claim to anything beyond the embodiments described in the patent. Boy, did you just give a license to the whole world. Because you know what? I'm positive. And I don't even have a clue what their device is about, but I'm positive there's a lot of people that have devices that don't fall 100% within the four corners of the embodiments of this patent. And I think you just made a colossal mistake. Would you like to take it back? I'm going to give you a take back. Sure. What I said was, and what I intended to certainly say was, was that without a reason to deviate from that, and there's been no evidence, for example, in the case, their expert never testified that it would cover such an embodiment. I don't think there's been any allegation that it would cover such an embodiment. We're way beyond your time. Let's have a closing counsel come up. Chief Judge Moore, may I please the court? Happy New Year. If I could start with the claims, I think it's important to remember these are broadened reissue claims. They've gone a long way from the specification, from the original application 20-plus years ago when cable television was very much not what cable television is today. And when they were reissued in 2013, they went away even from what's in the specification. As the questioning has indicated, Claim 1 is not limited to any kind of network. You can see that by contrast to Independent Claim 12, which does specify that the second device has to be capable of propagating video and audio. One would think from that limitation in Claim 12 that Claim 1 is not limited to a device that is capable of propagating video and audio and would read on an audio-only device, or for that matter. It's just not limited to the field of audio or video transmission the way Claim 1 is written. In the 326CBM proceeding, which is the next appeal, the board in fact held that the claims are not limited to cable television networks. These claims in the 326 patent as reissued... I'm jumping ahead with a dumb question, but if we were to agree with you on the next appeal, which is the CBM, does that move this whole appeal? Yes, Your Honor. There are three grounds of unpatentability for the 326 patent. But 31st is not true because this has fewer claims than the other. Well, Prompto essentially has to run the table on the 326 to get anything back, and any ground of it would be sufficient. It's also been dismissed with prejudice from the district court proceedings. So the 326 is kind of out six ways from Sunday, but we think correctly. I think we need to rewind the tape. Just very specifically, claims 10 and 20 are not in this case? In the Eastern District of Pennsylvania litigation... I'm sorry. I'm talking about the case that you two are arguing right now. Right now. Not 15 minutes from now. I'm sorry. The board held that the challenge claims 1 and 12 and the dependent claims are unpatentable over the Julia and Hauser references. Based on a claim construction, and I think this got a little lost, that Prompto proposed. Comcast initiated this petition. Prompto, in the patent owner response, proposed a definition of network... I'd say this argument about... The board entertained on the merits the argument, whether they call it claim construction or not, or a modification of initial one, there was a full addressing of the contention that this claim requires their no kind of interpretation. Why do we care if that was presented as an interpretation of their initial... I don't even mean initial in time, just initial in the pages. Yes, sir. Why does that matter? It matters for this reason. It's a construction on a construction. It's a derivative construction, if you will. I would like to start where Prompto started. What they first said in the patent owner response was that a network path is, I quote, a physical route through which data is transmitted from a source to a destination. And that's the definition that the board accepted. So it was Prompto proposed, the board accepted. Then after initiation, Prompto said, wait, we need a construction of the construction. The source and the destination, which read on the remote... Just so I'm clear, when you said Prompto initially proposed, was that like a preliminary... In the preliminary response, yes. And then the board... There was some difference in time. Correct. And then on the merits, the trial merits, Prompto proposed this bidirectional communication because under the construction that... But can one make anything more of that other than we ought to be a little bit suspicious when there is supplementation of an initial presentation. Well, it is... There was no suggestion. The board did not think this was forfeited somehow. No, Your Honor. Right? And this is... The point is this. It has no basis in the patent or the claims or the specification and was never presented as such. What Prompto seized upon was the deposition of Comcast IPR expert as the trial proceeded to say, well, he testified that networks have nodes and that some nodes are bidirectional. Therefore, we would like this construction to be modified to include only bidirectional nodes because otherwise, of course, the references invalidate the claims. And the board did entertain that, absolutely. We are not arguing forfeiture or waiver or anything. We're simply laying out the sequence of events to understand that it's a derivative construction. And the board rejected that construction on the ground presented to the board, which was Comcast is bound by Mr. Schman's testimony. That was the basis on which Prompto presented it to the board, which is different than what we heard this morning. And the board disagreed with that. And here's why I'm going to directly answer your question now why it's very important. The board relied and found persuasive Mr. Schman's reply declaration, which is in the record at appendix 9241, which says that a network may include unidirectional nodes. And the board accepted that. And that's a factual finding in the context of a construction requested by the patent holder and therefore is entitled to deference in this court under TEVA and the PTAB implementations of TEVA. That's the end of the case as far as claim construction law, we think. So now in this court, Prompto has made an entirely different argument, which is that bidirectional was somehow supported by the patent itself. It's certainly not in the claims. Nothing in the claims requires it. And the specification, as the chief judge has pointed out, refers twice to maybe bidirectional and once to maybe unidirectional, all three of which clearly indicate that the network contemplated in the specification includes unidirectional communication, which is not surprising again. If we go back to the question, how a person of skill in the art would have understood this term in the early 2000s, there were many more unidirectional devices than there are today. Televisions were not smart, right? They were receiving devices at the time. Remotes were not smart. We didn't use phones to control televisions. We used one-way infrared remote controls, and that's all disclosed in the specification, and that's all described by the communications paths that are claimed. You know, that's... Did the board rely on testimony of the Comcast expert when it rendered a construction or decided this issue? So I have to answer in two steps, Your Honor. The board did not rely on accepting Prompto's proposed construction, a physical route through which data is transmitted from a source to a destination. That was Prompto's proposal that the board accepted. Then Prompto asked for a modification of that construction, and the board relied on the expert testimony in rejecting that modification. Where did they do that? Show me exactly where. They do that, Your Honor, at... 19, maybe? It is in Appendix 19 in the first IPR and Appendix 96 of the second IPR. It's the fourth reason given by the board for rejecting Prompto's argument. Schmantz, the sentence begins, Schmantz clarifying testimony is persuasive, and they have a block quote of his supply declaration from paragraph 14, and they say, we agree with Schmantz that nothing in the record limits a node to a bidirectional device. And so they've accepted the expert testimony in rejecting the proposed modification by Prompto, again, a modification of its own construction. Okay, so even if we, suppose we agree with you that a node doesn't have to be what we'll call bidirectional. It could just send or just receive, right? But what... Why isn't there a problem, nonetheless, with the board's construction in that it just talks about a physical route through which data is transmitted from one source to another? The word network path has to be given meaning, and in this claim, transferring said speech information from a first wireless device to a speech recognition engine would meet the definition the board gave. It just seems like the word network path itself in the claim was given no meaning by this board definition. Well, Your Honor, the board definition was, again, proposed by Prompto. Stop saying that. It's irrelevant. It's a question of law. I don't accept a stipulation by them on a question of law. Just stop talking about who proposed it. What is a network path? Define for me what a network path is. Your Honor, Comcast's proposal was plain and ordinary meaning. The board accepted Prompto's proposal, and Prompto hasn't challenged that. I actually do think it matters. I don't accept anybody's proposal. It's a question of law. I asked you a specific question. What is a network path? A network path is a path through a network. It has plain and ordinary meaning and requires no construction. What's a network? A network is a series of... I'm sorry. A single string between two little cups. One on my ear, one on your ear. Is that a network? I wouldn't think so. Your Honor, it depends on what kind of a network we are discussing. This claim does not tell us. It simply says a network path. That is a path between any two A node is just a shorthand for a place where a network path meets another network path. Can I ask? I mean this to be the same question that I started off with Mr. Schnaffer. The result here would be based on, what is it, Hauser, at least Hauser, would be the same if we thought that whatever else might not be a network like a single string between single A to B connection. It would be a network to have one intermediary hub. One that both sends and receives. Because Hauser, I think, indisputably shows that, right? Agreed, Your Honor. In the language of the claims, the speech recognition engine has to have bidirectionality because it receives something and it sends something. So there's a bidirectional node with two paths. Let's be clear about something. A network could have one hub that sends and receives, but there has to be a second node which at least receives to be a network. A network isn't a single node. It can't be a single node. That's correct, Your Honor. But that's the point. You can have a single node that sends and receives and a second node that only theoretically receives. Correct, Your Honor. Again, in the language of the claims, we have a first device that sends, a speech recognition engine in the middle that first receives and then sends, and a second device that receives. That's a very simple network. It goes from the remote to the speech recognition engine to the television. That's a network. It's connected by coaxial, fiber optic, whatever kind of cabling or connections. It can be bidirectional in the middle and unidirectional on each end. Mr. Schmantt testified to that. That was known in the art at the time. What did you say the network was? A remote and a television? The network that was found invalidating in Hauser and Julia is the remote to the processing engine to the television. Where is the processing engine? Between the remote and the television. I'm confused. I don't remember Hauser well, but where is the processing engine? Off-site or part of the integrated user system? It's not part of the remote. It is a separate module from the remote. But located where? Hauser doesn't specify it. It could be at the terminal unit, which is what Prompto has argued, the set-top box. Hauser actually says it is a separate module or system. Claim 1 doesn't have any... Claim 1 reads on a set-top box based speech recognition system as well. It doesn't have to go anywhere besides from the remote to the set-top box to the television. That would be Claim 1. The figures in Hauser either the terminal unit or the node could be... I'm looking at... I have to get my Hauser cheat sheet. I'm looking at Hauser figure 15? Yes. Either one of those is bidirectional. In Hauser, the terminal unit is bidirectional and the node that it goes to is bidirectional? Yes. But the input is not shown as bidirectional. The input from the microphone. All right. Thank you, Mr. Perry. Thank you, Your Honor. Is there any time left? Okay. Just give him two minutes. Thank you. Thank you, Your Honor. Judge Durano, you're right. There was no question at the board that our construction was a disputed issue. There's no argument for forfeiture or waiver here. We agree on that point. Judge Moore, you're exactly right that their construction reads out the word network path on the claim. Our central thesis is that that's just improper. That's an improper way to construe a claim. There has to be some meaning imported to the word network path. On this last issue of Hauser, again, there have been no findings of fact under our construction. Their new one, I think, offered for maybe the first time today is this network of just a there aren't multiple nodes in the network. Nor is there a bidirectional these paths aren't bidirectional. There'd only be one remote. There's only been one thing in the network at that point. There's been no finding of fact on that issue. That should be briefed further. That should not be something that should be entertained for the first time on appeal. With that... Okay. I thank both counsel. This case has taken your submission.